# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 9, 2022

Lyle W. Cayce
Clerk

No. 21-20520

Domingo Herrera,

*Plaintiff—Appellee*,

*versus*

Art Acevedo,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:20-CV-2083

Before King, Stewart, and Haynes, *Circuit Judges*.

Per Curiam:*

Domingo Herrera filed this suit pursuant to 42 U.S.C. § 1983 against the City of Houston, Houston Police Chief Art Acevedo, and several Houston Police Department (HPD) officers, alleging that his First, Fourth, and Fourteenth Amendment rights were violated when he was arrested during a protest in Houston. The defendants moved to dismiss Herrera's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) and the district

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 21-20520

court denied the motion. This interlocutory appeal followed. Because we agree with the district court's determination that Herrera has pled a claim for relief that is plausible on its face, we AFFIRM.

## I. FACTUAL & PROCEDURAL BACKGROUND

On May 30, 2020,[1] Herrera was arrested while attending a George Floyd protest in Houston, Texas. According to Herrera, he and dozens of others were peacefully protesting on a downtown Houston sidewalk when a large group of HPD officers in riot gear converged on them and began to employ a maneuver known as "kettling" by forcing them into a small space and surrounding them, so they were unable to leave. Herrera alleges that he asked to leave but HPD officers told him he was being detained. Officers then bound Herrera's hands with zip ties and transported him and numerous others to the Harris County jail where he was held for 24 hours before being released on a personal recognizance bond. Herrera contends that he was initially told that he was being charged with obstructing a roadway but that the obstruction charges were dropped about a week later.

Soon thereafter on June 12, 2020, Herrera filed this § 1983 suit in federal district court alleging that the defendants violated his First, Fourth, and Fourteenth Amendment rights by unlawfully detaining him without probable cause during the protests. In his complaint, Herrera contended that HPD officers were aware that "he was committing no crime" but still arrested him because he was exercising his constitutionally "protected right to peaceably assemble and to speak with law enforcement officers." He further claimed that, "the hundreds and hundreds of unlawful[] detentions and arrests for many days constitute[d] an [u]nconstitutional pattern,

---

[1] Although there is some conflict in the record as to Herrera's exact date of arrest, the parties agreed at the August 2021 motion hearing that the correct date is May 30, 2020.

practice, custom, and procedure of the City of Houston" resulting in liability under *Monell*.[2] He also advanced a claim of malicious prosecution against the defendants on grounds that they created false police reports and documents stating that he had obstructed the roadway when he had not done so.[3]

The defendants moved to dismiss Herrera's claims under Rule 12(b)(6) on grounds of qualified immunity. *See* FED. R. CIV. P. 12(b)(6). In August 2021, the district court held a motion hearing and denied the defendants' motion except with respect to Herrera's Fourteenth Amendment claim which it dismissed without prejudice. During the hearing, the district court explained "I think you may have a very good claim on the qualified immunity as to Mr. Acevedo, but I think it's a little bit early for that, too. We have clearly established law on preventing arrest without probable cause and arrest for the purpose of chilling protected speech." The court then concluded "I think we need to know more about the circumstances and the motivations of Chief Acevedo before I can make that ruling. I think you may very well win on that, but I don't think you'll win at this stage." It then memorialized its denial of the defendants' Rule 12(b)(6) motion in a minute entry on the docket and the defendants filed this interlocutory appeal pursuant to 28 U.S.C. § 1291.

---

[2] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

[3] We note that although Herrera attempted to add eight additional plaintiffs to his suit, the district court denied leave to do so in April 2021. Thereafter, it appears that Herrera provided summaries of the relevant facts related to each of the non-parties in his amended complaint. While we acknowledge that the defendants disagree with Herrera's decision to include the summaries, it is unnecessary that we address their concern to adjudicate the dispositive issues in this interlocutory appeal.

No. 21-20520

## II. Standard of Review

"An order denying qualified immunity, to the extent it turns on an issue of law, is immediately appealable." *Laviage v. Fite*, 47 F.4th 402, 405 (5th Cir. 2022) (citing *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011)). We conduct a de novo review of a district court's denial of a motion to dismiss invoking the defense of qualified immunity. *Club Retro, LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). In doing so, "[w]e must accept all well-pleaded facts as true" and "view all facts and inferences in the light most favorable to the nonmoving party." *Id.* (citation omitted). "To resist dismissal, plaintiffs must plead 'enough facts to state a claim for relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III. Discussion

On appeal, the defendants argue that the district court erred in denying their motion to dismiss on qualified immunity grounds. They contend that Herrera has failed to plead sufficient facts stating a claim for a constitutional violation by Acevedo individually and that, even if he has stated a claim, he has failed to show that the allegedly violated right was clearly established. For reasons which we will explain below, we disagree.

When a plaintiff sues a governmental official for alleged violations of his constitutional rights, qualified immunity protects the official "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Byrd v. Cornelius*, 52 F.4th 265, 270–71 (5th Cir. 2022) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To determine whether qualified immunity applies, this court engages in a two-part inquiry asking first whether "the facts alleged show the officer's conduct violated a constitutional right" and second, "whether the right was clearly

established" at the time of the alleged violation. *Id.* at 271 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Appellate courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

"Individuals who protest are [] protected under the First Amendment from retaliatory actions by government officials." *See Davidson v. City of Stafford*, 848 F.3d 384, 391 (5th Cir. 2017) (citing *Allen v. Cisneros*, 815 F.3d 239, 244 (5th Cir. 2016)); *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (citation omitted). Similarly, "[a] warrantless arrest without probable cause violates clearly established law defining an individual's rights under the Fourth Amendment." *Id.* (citing *Hogan v. Cunningham*, 722 F.3d 725, 731 (5th Cir. 2013)). If an officer has probable cause to seize an individual such as a protestor, however, "the objectives of law enforcement take primacy over the citizen's right to avoid retaliation." *Id.* In this context, "probable cause 'means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Id.* (citations omitted). Consequently, officers are entitled to qualified immunity "unless there was no actual probable cause for the arrest and the officers were objectively unreasonable in believing there was probable cause for the arrest." *Id.* (citations omitted). Under this scenario, "probable cause may be for any crime and is not limited to the crime that the officers subjectively considered at the time they perform[ed the] arrest." *Id.* (citing *Club Retro*, 568 F.3d at 204).

Here, the district court stated at the motion hearing that it could not yet dismiss Herrera's First and Fourth Amendment claims against the defendants because of the existence of "clearly established law on preventing

arrest without probable cause and arrest for the purpose of chilling protected speech." We agree. The defendants' primary argument on appeal is that HPD officers had probable cause to arrest Herrera because he violated Section 42.03 of the Texas Penal Code when he stood on, or obstructed, the sidewalk to participate in the protests. *See* TEX. PENAL CODE § 42.03.[4] As this court has explained in this exact scenario, however, there is no probable cause to arrest under this statute without a showing that the individual actually "render[ed] [passage] impassable or . . . render[ed] passage unreasonably inconvenient or hazardous." *See Davidson*, 848 F.3d at 393 ("Given that the information available to [the officers] at the time of [the protestor's] arrest indicated that (1) [the protestor] had delayed (by his words, not physically), but not prevented anyone from entering the Clinic and (2) [the protestor] was exercising his First Amendment rights by protesting, it was objectively unreasonable for these officers to conclude that there was probable cause to arrest [the protestor] under § 42.03."). Indeed, as we have observed, "[b]y requiring [under § 42.03] that passage be severely restricted or completely blocked . . . we give ample breathing room for the exercise of First Amendment rights. At the same time, such a definition

---

[4] Section 42.03 states in pertinent part:

> (a) A person commits an offense if, without legal privilege or authority, he intentionally, knowingly, or recklessly:

> (1) obstructs a highway, street, sidewalk, railway, waterway, elevator, aisle, hallway, entrance, or exit to which the public or a substantial group of the public has access, or any other place used for the passage of persons, vehicles, or conveyances, regardless of the means of creating the obstruction and whether the obstruction arises from his acts alone or from his acts and the acts of others[.]

> . . .

> (b) For purposes of this section, "obstruct" means to render impassable or to render passage unreasonably inconvenient or hazardous.

adequately protects the right of the public to have access to the . . . premises." *See Sherman v. State*, 626 S.W.2d 520, 526 (Tex. Crim. App. 1981).

In addition to the cases establishing the potential lack of probable cause in the context of arresting protestors under § 42.03, extensive case law also existed at the time of Herrera's arrest clearly establishing that an arrest without probable cause violates both First and Fourth Amendment rights. *See Davidson*, 848 F.3d at 393–94 (citing *Club Retro*, 568 F.3d at 206 ("The Fourth Amendment right to be free from false arrest—arrest without probable cause—was clearly established at the time of [the arrests in 2006].")); *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002) ("If no reasonable police officer could have believed that probable cause existed for the law enforcement actions of [the officers] against the plaintiffs, then their retaliation violated clearly established law of this circuit.")). Texas courts have likewise consistently recognized the First and Fourth Amendment rights of protestors to express their views without being subjected to false arrests. *See Faust v. State*, 491 S.W.3d 733, 745 (Tex. Crim. App. 2016) ("Public streets and sidewalks are traditional public forums. Picketing and marching, if peaceful and orderly, are entitled to First Amendment protection as methods of expression. There is no dispute that [the protestors] had a First Amendment right to express their views in a public forum."); *Iranian Muslim Org. v. City of San Antonio*, 615 S.W.2d 202, 205 (Tex. 1981) ("The freedoms of speech, peaceable assembly and the right of petition, guaranteed by the first amendment to the Constitution of the United States, are basic to the fabric of our liberty. The rights to picket and demonstrate in public places, particularly streets, sidewalks, and parks, are extended first amendment protection." (citing *Lehman v. City of Shaker Heights*, 418 U.S. 298, 303 (1974); *Shuttlesworth v. City of Birmingham*, 394 U.S. 147 (1969); *Cox v. Louisiana*, 379 U.S. 536 (1965); *Hague v. C.I.O.*, 307 U.S. 496, 515 (1939)).

Here, according to Herrera's amended complaint, he "had not obstructed any roadway" yet he was arrested for violating Texas's roadway obstruction statute while attempting to participate in a constitutionally protected peaceful protest. It is unclear from this record if HPD officers had probable cause to arrest Herrera during the protest. In turn, it is unclear if there was a violation of Herrera's First and Fourth Amendment rights when he was arrested. As the district court observed, "[t]here's no way to make a determination . . . right now whether [Herrera] was or was not violating Texas Penal Code." If the facts in Herrera's complaint are taken to be true, however, he has at minimum pled enough "to state a claim for relief that is plausible on its face" and thus survives the motion-to-dismiss stage. *Club Retro*, 568 F.3d at 194. Accordingly, we hold that the district court did not err in denying the defendants' motion to dismiss on grounds of qualified immunity.

Finally, both parties draw our attention to another appeal related to this one that was recently adjudicated by a panel of this court, No. 21-20623, *Utley v. City of Houston*, 2022 WL 2188529 (5th Cir. June 17, 2022) (per curiam) (unpublished). The district court in the related appeal (*Utley*) denied the defendants' motion to consolidate that appeal with this one (*Herrera*), explaining that:

> It appears that some overlapping questions of fact and law may exist, at least at a certain level of generality. But the exact nature of the protests each day and any alleged precipitating factor in the arrests of Utley and Herrera are at variance, being four days apart and in different geographic locations. The arresting officers also aren't alleged to be the same. These differences risk juror confusion if consolidated. And given the differences in time, location, method of arrest, and arresting officers, a potentially different result in each action can't be ascribed to inconsistent adjudications. Different actors and conduct permit different liability conclusions.

After denying the defendants' consolidation motion, the district court granted their Rule 12(b)(6) motion to dismiss for failure to state a claim. A panel of this court then affirmed the district court's dismissal order on grounds that "Utley's first amended complaint contain[ed] nothing other than conclusory allegations in support of his claims." *Id.* at \*1. The defendants in Herrera's appeal now request that we follow the *Utley* panel's decision and dismiss this case for the same reasons. While we recognize that similarities exist between the two related appeals, we agree with the district court's reasoning for denying the defendants' consolidation motion and do not consider ourselves bound by the related appeal panel's unpublished, non-precedential holding affirming the district court's order dismissing Utley's claims. *See Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006) ("An unpublished opinion issued after January 1, 1996 is not controlling precedent, but may be persuasive authority.").

## IV. Conclusion

The district court's order denying the defendants' motion to dismiss is AFFIRMED.